******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE RYSHAN N.*
## (AC 47771)

Alvord, Cradle and Prescott, Js.

*Syllabus*

The respondent mother appealed from the judgment of the trial court terminating her parental rights with respect to her minor child. She claimed that the court improperly drew an inference that was unsupported by the evidence and relied on that inference in finding that she failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the child's age and needs, she could assume a responsible position in his life. *Held*:

The trial court, in finding that termination of the respondent mother's parental rights was in the best interest of the child, did not draw an inference that the mother was under the influence of drugs during her visits with the child and, instead, plainly and unambiguously concluded that it did not have enough evidence to make that determination.

Argued January 6—officially released February 10, 2025**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Hartford, Juvenile Matters, and tried to the court, *Frazzini, J.*; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

** February 10, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent mother).

*Rosemarie T. Weber*, deputy associate attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa Khan*, assistant attorney general, for the appellee (petitioner).

*Deetta C. Roncone-Gondek*, for the minor child.

*Opinion*

PER CURIAM. The respondent mother, Crystal G., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor son, Ryshan N.[1] On appeal, the respondent claims that the court improperly drew an inference that was unsupported by the evidence and relied upon that inference in finding that she failed to achieve such degree of personal rehabilitation as would encourage the belief that in a reasonable time, considering Ryshan's age and needs, she could assume a responsible position in his life as required by General Statutes § 17a-112 (j) (3) (B).[2] We affirm the judgment of the trial court.

Shortly after Ryshan's birth in February, 2022, he was adjudicated neglected and committed to the custody of the petitioner. The petitioner thereafter filed a petition to terminate the respondent's parental rights. On March 28, 2024, following a four day trial, the court issued a memorandum of decision in which it granted the petition to terminate the respondent's parental rights. The court found, by clear and convincing evidence, that the

[1] The termination of the parental rights of Ryshan's father has not been challenged on appeal. Accordingly, all references to the respondent are to the respondent mother only.

[2] The attorney for the minor child has filed a statement adopting the appellate brief of the petitioner.

respondent was unwilling or unable to benefit from efforts to reunify her with Ryshan. The court also found that the respondent had failed to rehabilitate in that she had unresolved issues with mental health, substance abuse and intimate partner violence, and that termination of the respondent's parental rights was in Ryshan's best interest. This appeal followed.

The respondent claims that the court improperly drew an inference that was unsupported by the evidence when it failed to conclude that the respondent was not under the influence of drugs during her visits with Ryshan. The alleged inference stems from the court's consideration of the respondent's visitation and relationship with Ryshan, wherein the court noted, inter alia, the testimony of two Department of Children and Families workers, Vanessa Lopez and Richard Bloomfield, who supervised the respondent's visitation with Ryshan. Lopez and Bloomfield both testified that the respondent at times appeared to have fallen asleep during her visitation with Ryshan, but did not appear to be under the influence.[3] The court explained in a footnote: "The testimony from Lopez and Bloomfield about those

---

[3] The court recounted: "Lopez testified that sometimes [the respondent] fell asleep during visits and, on two occasions, had smelled of marijuana but did not appear impaired. Lopez testified that when she one time tried to wake the [respondent], [the respondent] denied having fallen asleep and said that her eyelash extensions had given a false impression of her having done so. Lopez' descriptions of these incidents, however, were credible. (When asked to describe what she saw that led to these conclusions, Lopez said that, on 'one of the occasions, [the respondent] leaned her head back on the visit couch while holding Ryshan and kind of draped her arm over her face.' On other occasions, 'from where I was sitting it looked like she was struggling to stay awake because her eyes were kind of fluttering closed.' . . . Bloomfield testified that sometimes [the respondent] would come to the visits with a very strong odor of marijuana. He said that she usually sat on a couch during the visit and that at a lot of these visits it appeared to him that she had fallen asleep, but he could not be sure because of her eyelashes, but that, if he asked her about sleeping, she would become very combative. He did say, however, just like Lopez, that the [respondent] did not appear to be under the influence." (Citation omitted.)

visits was detailed and credible, except that the court does not fully credit as believable their remarks about her not appearing to be under the influence. Such testimony tells the court that on those occasions the mother may not have been not acting erratically, and, in that sense, she may not have appeared to be 'under the influence.' On the other hand, falling asleep or appearing to do so, while taking care of a child, is a possible sign, despite the testimony of the two visitation supervisors to the contrary, of [the respondent] having been 'under the influence' on those occasions. Other factors could have caused her to fall asleep, or appear to do so, but without any evidence about other such causes the court can *neither conclude nor rule out that her drowsy demeanor on those occasions was the result of her being impaired as the result of substance abuse.*" (Emphasis added.)

The respondent claims that, in stating that it could "neither conclude nor rule out that [the respondent's] drowsy demeanor on those occasions was the result of her being impaired as the result of substance abuse," the trial court drew an inference that the respondent's alleged drowsiness during visitation was the result of her being under the influence. We disagree.

Resolving the respondent's claim requires us to interpret the court's judgment. "The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole . . . without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *CCI Computerworks, LLC*

v. *Evernet Consulting, LLC*, 221 Conn. App. 491, 523, 302 A.3d 297 (2023).

Here, the respondent takes issue with the court's statement that it could not rule out the possibility that she was under the influence when she visited Ryshan. The court simply stated, however, that it was not crediting the testimony that the respondent was not under the influence. It does not follow that, in so stating, the court found that the respondent was under the influence. In other words, the court's statement that it could not conclude that the respondent was not under the influence when she visited with Ryshan was not tantamount to an affirmative finding that she was under the influence. The court's acknowledgement that there were other factors that could have caused that demeanor supports its refusal to conclude that she was under the influence. Although the court was troubled by the respondent's demeanor during those visits when she appeared to have fallen asleep and indicated that it did not credit the testimony that she was not under the influence, it plainly and unambiguously concluded that it did not have enough evidence to determine whether she was or was not under the influence. Our conclusion that the court did not draw the inference that the respondent was under the influence when she visited Ryshan is underscored by the fact that the court did not mention it when it again discussed the respondent's visits with Ryshan later in its decision, and, instead, focused on the respondent's passive and disinterested demeanor during those visits. We therefore reject the respondent's claim that the court drew an inference that she was under the influence during her visits with Ryshan.

The judgment is affirmed.